UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MELANIE J. FLOYD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE[1], Commissioner of Social Security,<br><br>　　　　Defendant. | CASE NO.　C06-5608RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for June 1, 2007 |

Plaintiff, Melanie J. Floyd, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Robert J. Bryan's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is thirty-four years old.[2] Tr. 19. She has a high school education, has completed

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue, who recently became acting Commissioner of Social Security, hereby automatically is substituted for Joanne B. Barnhart.

[2] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

1  some college course work and has past work experience as a bakery helper, cashier, kitchen helper, cook,
2  tipping machine operator, painting machine operator, and general laborer. Tr. 16, 53, 58.
3        Plaintiff filed an application for SSI benefits in June 1986, alleging disability due to a learning
4  disorder. Tr. 12.  A constructive application for disability insurance benefits also was made. Id.  Plaintiff's
5  applications were denied on December 1, 1997, and she did not seek further review of that determination.
6  Id. On May 2, 2002, plaintiff again filed applications for disability insurance and SSI benefits, alleging
7  disability as of July 1, 1992, and September 1, 2001, respectively due to an anxiety disorder, depression,
8  tooth decay, and being a slow learner. Tr. 12, 44-46, 52, 151-53.  Her applications were denied initially and
9  on reconsideration. Tr. 19-20, 23, 28, 154-56, 160.
10       A hearing was held before an administrative law judge ("ALJ") on July 1, 2004, at which plaintiff,
11  represented by counsel, appeared and testified, as did a vocational expert. Tr. 164-207.  On October 25,
12  2005, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

13        (1)    at step one of the disability evaluation process,[3] plaintiff had not engaged in substantial gainful activity during the relevant time period;

15        (2)    at step two, plaintiff had "severe" impairments consisting of a learning disorder in math and written expression, a depressive disorder, and a post traumatic stress disorder ("PTSD");

17        (3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and

18        (4)    at step four, plaintiff had a residual functional capacity involving no physical limitations, but subject to certain mental functional limitations, which did not preclude her from performing her past relevant work.

20  Tr. 17-18.  Plaintiff's request for review was denied by the Appeals Council on August 25, 2006, making
21  the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981, § 416.1481.
22       On October 23, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision.
23  (Dkt. #1).  Specifically, plaintiff argues that decision should be reversed and remanded for an award of
24  benefits, because the ALJ's findings regarding the mental functional limitations contained in her residual
25  functional capacity assessment are not supported by substantial evidence.  The undersigned agrees the ALJ
26  erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while

---

[3] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION
Page - 2

1 the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further
2 administrative proceedings.

## DISCUSSION

4     This Court must uphold the Commissioner's determination that plaintiff is not disabled if the
5 Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to
6 support the decision. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is
7 such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson
8 v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than
9 a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir.
10 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than
11 one rational interpretation, the Court must uphold the Commissioner's decision. <u>Allen v. Heckler</u>, 749 F.2d
12 577, 579 (9th Cir. 1984).

13 I.    <u>The ALJ Improperly Assessed Plaintiff's Residual Functional Capacity</u>

14     If a disability determination "cannot be made on the basis of medical factors alone at step three of
15 the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and
16 assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A
17 claimant's residual functional capacity assessment is used at step four to determine whether he or she can do
18 his or her past relevant work, and at step five to determine whether he or she can do other work. <u>Id.</u> It thus
19 is what the claimant "can still do despite his or her limitations." <u>Id.</u>

20     A claimant's residual functional capacity is the maximum amount of work the claimant is able to
21 perform based on all of the relevant evidence in the record. <u>Id.</u> However, a claimant's inability to work
22 must result from his or her "physical or mental impairment(s)." <u>Id.</u> Thus, the ALJ must consider only those
23 limitations and restrictions "attributable to medically determinable impairments." <u>Id.</u> In assessing a
24 claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-
25 related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the
26 medical or other evidence." <u>Id.</u> at *7.

27     Here, the ALJ found plaintiff "retained a residual functional capacity without physical limitations,"
28 but limited her to "simple, repetitive 1-2 step tasks, with superficial to limited public interaction and a stable

REPORT AND RECOMMENDATION
Page - 3

work routine without multiple changes in her routine." Tr. 16-17.  Plaintiff does not challenge the determination regarding her physical functional limitations, but argues the ALJ's findings concerning her mental functional limitations are not supported by substantial evidence.  In so making those findings, she asserts, the ALJ erred in evaluating the opinion of Katherine Brzezinski-Stein, Ph.D., and in rejecting the conclusion of the State of Washington Department of Social and Health Services' Division of Vocational Rehabilitation ("DVR") that she had disabling limitations.

      A.      <u>The ALJ Erred in Evaluating the Opinion of Dr. Brzezinski-Stein</u>

In late January 2002, Dr. Brzezinski-Stein evaluated plaintiff and completed a "DVR Psychological Evaluation Report." Tr. 110.  Based on that evaluation, which included plaintiff's own self-report, a mental status examination, and psychological testing, Dr. Brzezinski-Stein diagnosed plaintiff with PTSD, a recurrent moderate major depressive disorder, a mild reading disorder, a mathematics disorder, a disorder of written expression, and a global assessment of functioning ("GAF") score of 41. Tr. 115.  With respect to plaintiff's functional capabilities, Dr. Brzezinski-Stein concluded as follows:

> Mild impairments were identified in the areas of vocabulary, verbal reasoning, fund of knowledge, psychomotor speed, visual abstract reasoning, and writing skills.  Ms. Floyd exhibited moderate difficulties in the areas of common sense reasoning, verbal comprehension, mental arithmetic calculation skills, immediate/delayed auditory memory, arithmetic, spelling, reading comprehension and language usage. . . .
>
> Despite the range and severity of her deficits, Ms. Floyd also exhibited numerous areas of strength and preservation.  These included attention/concentration and short term auditory memory, spatial reasoning, planning ability/social reasoning, perceptual organization and speed, and immediate/delayed visual memory.  She exhibited above average attention to visual detail. . . .
>
> Ms. Floyd's depression [sic] severe PTSD alone would serve as significant obstacles to occupational functioning.  They are being treated by medication alone. . . .
>
> From a vocational standpoint, Ms. Floyd's desire to become a dog trainer may be realistic since most of these types of jobs are taught via a type of apprenticeship or on the job training.  Her desire to perform police work, however, appears to be less realistic.  It is doubtful that Ms. Floyd would be accepted into a police academy given the severity of her learning disabilities.  She would not likely benefit from any type of formalized classroom type training setting.  Ms. Floyd would rather need to be taught explicitly in a "hands-on" situation which is well supervised and which allows adequate time for new learning to crystallize.  Given her moderately impaired auditory memory, the use of a dictaphone could be extremely important in helping her to review oral instructions as many times as needed before she commits them to memory.  Pictorial instructions, of course, would be preferable whenever possible.  Given such as [sic] approach, she could be expected to operate routinized equipment in business, industrial and medical settings.  She could also be expected to learn and perform jobs with a lengthy number of routinized steps.  However, she could in no way be expected to "troubleshoot" or to deal well with any unexpected deviations from an established

REPORT AND RECOMMENDATION
Page - 4

>routine. Other types of potential occupational goals could include printer, machinist, quality control, checker, security guard, driver/delivery, maintenance, mechanic, medical/dental assistant, production/assembly work, nurse aide, and warehouse work.

Id.

In discussing the above opinion, the ALJ stated in his decision that Dr. Brzezinski-Stein had found plaintiff "could operate routinized equipment and perform jobs with routine steps; she identified a number of such occupations." Tr. 15. This finding, the ALJ further stated, was "consistent with the record," and the ALJ therefore gave it "fairly substantial weight." Id. As noted above, Dr. Brzezinksi-Stein also found plaintiff needed "to be taught explicitly in a 'hands-on' situation," which was "well supervised" and which allowed "adequate time for new learning to crystallize." Tr. 115. Plaintiff argues that Dr. Brzezinski-Stein, in so finding, was speaking merely in terms of vocational potential, in that she felt plaintiff could engage in such tasks and work only if specialized instruction and supervision first was given.

Defendant agrees that a need for specialized instruction and supervision can be a significant factor in determining disability, because requiring more supervision or assistance than that received by others in the same occupation may be indicative of an inability to perform substantial gainful activity. See 20 C.F.R. § 404.1573(b). Defendant argues, however, that Dr. Brzezinski-Stein made no such finding, asserting that the term "well supervised" does not necessarily mean supervised more than the average employee, and that, similarly, the phrase "adequate time for new learning" does not mean more time than allowed for a typical employee, but merely an "adequate" amount of time. Thus, defendant claims, the use of such terms by Dr. Brzezinski-Stein was not inconsistent with the ALJ's finding that plaintiff was capable of performing the unskilled jobs she did in the past, as unskilled jobs involve work that usually can be learned within thirty days. See 20 C.F.R. §§ 404.1568(a), 416.968(a).

The undersigned finds defendant's argument unpersuasive. First, defendant ignores the opinion of Dr. Brzezinski-Stein that plaintiff also would need to be taught in a "hands-on" situation. Tr. 115. It is not at all clear based on the record in this case that the typical or average employee, either in plaintiff's past relevant work or other work she was found to be capable of performing, is trained in this way. Indeed, Dr. Brzezinski-Stein's emphasis on the need for this specific type of learning strongly indicates her belief in a special need for plaintiff in this regard. Likewise, the emphasis she also placed on the need for plaintiff to be "well-supervised" and to have "adequate time" for new learning to crystalize, again strongly indicates the

REPORT AND RECOMMENDATION
Page - 5

1  view that plaintiff would require special provisions in regard to the training she receives.

2  While it may be true, as defendant asserts, that the terms "adequate time" and "well supervised" do
3  not necessarily mean "more" training or supervision in every situation, those terms do indicate that careful
4  attention will have to be given to plaintiff's training and supervision needs, a requirement that defendant has
5  not shown generally is made for the average or typical employee. While it also is true that pursuant to 20
6  C.F.R. 404.1573(b), an inability "to do ordinary or simple tasks satisfactorily without more supervision or
7  assistance than is usually given other people doing similar work" may show a claimant is "not working at
8  the substantial gainful activity level," a step one determination, defendant again points to no requirement
9  that a need for "more" training or supervision must be shown at steps four and five to be a relevant factor in
10 assessing a claimant's residual functional capacity.

11 Even if the undersigned were to agree with defendant on this issue, nothing in the ALJ's decision
12 shows that the ALJ adopted defendant's interpretation of Dr. Brzezinski-Stein's statement concerning the
13 type of training plaintiff would need, or that the ALJ even considered it. Further, it seems quite clear that
14 Dr. Brzezinski-Stein felt plaintiff could perform the type of work she opined plaintiff eventually could be
15 expected to perform, only if plaintiff first received the kind of training discussed above. This is evidenced
16 by the fact that Dr. Brzezinski-Stein expressly stated that "[g]iven such an approach, she could be expected
17 to operate routinized equipment in business, industrial and medical settings." Tr. 115 (emphasis added). It
18 also appears that Dr. Brzezinski-Stein felt she could "be expected to learn and perform jobs with a lengthy
19 number of routinized steps" only given such an approach as well. Id. Finally, Dr. Brzezinski-Stein did not
20 specifically state plaintiff could perform the occupations noted above, but instead grouped them within the
21 category of "potential occupational goals." Id.

22 Accordingly, the undersigned finds the ALJ erred in stating Dr. Brzezinski-Stein believed plaintiff to
23 be capable, without qualification, of doing work involving the operation of routinized equipment and the
24 performance of routinized steps. Rather, as explained above, Dr. Brzezinski-Stein felt she would be able to
25 do so only if first "taught explicitly in a 'hands-on' situation which is well supervised and which allows
26 adequate time for new learning to crystalize." Tr. 115. Because the ALJ did not address this issue when he
27 assessed plaintiff's residual functional capacity, it is not clear that assessment properly encompasses all of
28 her mental functional limitations. Also, while Dr. Brzezinski-Stein did find plaintiff exhibited strengths in

REPORT AND RECOMMENDATION
Page - 6

the areas of concentration and attention to visual detail (Tr. 114-15), she provided no specific opinion that plaintiff "could perform tasks requiring concentration and attention to detail" as found by the ALJ. Tr. 16. This finding by the ALJ also is not necessarily consistent with Dr. Brzezinski-Stein's opinion that plaintiff could perform routinized steps only after receiving proper training and supervision.

B. <u>The ALJ Properly Rejected the Findings of the Division of Vocational Rehabilitation</u>

The record contains a "Certification of Significance of Disability" worksheet, dated February 12, 2002, issued by DVR concerning plaintiff. Tr. 118-21. That worksheet is to be used by a "VR Counselor" to "identify serious functional losses related to an individual's disability," and consists of boxes that can be checked to indicate specific physical and mental limitations and their resulting level of disability in various functional areas. Tr. 119. In this case, plaintiff was placed in the category of "Individuals With Significant Disabilities," defined in relevant part as an individual with:

> One or more physical, mental or sensory impairments that result in serious limitation in <u>one or more</u> functional area [sic] (mobility, self-direction, self-care, interpersonal skills, communication, work tolerance, work skills) **and**
>
> Requires multiple vocational rehabilitation services (two or more) over an extended period of time*[4] to become employed: **and**
>
> One or more physical and mental disabilities resulting from [various impairments listed on the form] or another disability or combination of disabilities determined on the basis of an assessment for determining eligibility to cause comparable serious functional limitations.

Tr. 118 (emphasis in original).

Of particular relevance here, plaintiff was noted to have a "serious functional loss" in the areas of interpersonal skills, self-direction and work skills. Tr. 120-21. "A serious functional loss" in the area of self-direction, "is present if an individual requires a higher level of supervision than is typically needed by other workers to accomplish tasks, monitor one's own behavior, and/or make independent decisions." Tr. 121. Plaintiff was found to be "[u]nable to follow instructions, concentrate, remember or complete tasks" and to require "more training and supervision than others to make adjustments in work methods or to shift from one task to another," each of which are examples of a serious functional loss. Id. A serious functional loss in work skills "is present if an individual requires more training and supervision than other employees or

---

[4]"*Note: No specific timeframe for 'extended period of time' is defined in statute or regulation. The VR Counselor must consider each person's unique circumstances to determine whether the needed service can reasonably be expected to require an extended period of time. For this purpose, 12 months may be used as a general benchmark, but not applied as an absolute limit, since each individual's circumstances must be uniquely considered." Id.

REPORT AND RECOMMENDATION
Page - 7

1  requires job modifications or adaptive technology to perform work tasks." Tr. 121. An example of such a
2  loss, which plaintiff again was found to have, includes the inability "to learn new tasks or maintain skills
3  without intensive and/or specialized instruction or learning accommodations." Id.
4      With respect to this DVR worksheet, the ALJ found as follows:

> The claimant had a vocational rehabilitation assessment in February 2002, which concluded that she was disabled (exhibit 5F). The Social Security Administration is not bound by disability determinations made by other agencies, because of different rules governing the definition and assessment of disability (20 C.F.R. §§404.1504, 416.904). In this case, the finding of disability is based in part on purported inability to follow instructions, concentrate, remember, or carry out tasks, and because the claimant requires more supervision and training than others, and needs intensive or special instruction to learn new tasks (exhibit 5F:4). Those latter factors are not relevant to Social Security determinations, and the assessment of the claimant's level of attention, concentration, and memory is inconsistent with the testing and opinions of Dr. Brzezinski-Stein. The vocational rehabilitation report is not given great weight.

Tr. 15. Plaintiff argues that the findings contained in the DVR worksheet were based on Dr. Brzezinski-Stein's opinion, that those findings are a fair reading of the limitations found by Dr. Brzezinski-Stein, and that the factors noted by the ALJ to be irrelevant to a Social Security disability determination are pertinent to the issue of residual functional capacity. As such, plaintiff asserts, the ALJ erred in declining to give great weight to those findings. The undersigned disagrees.

    Although plaintiff asserts the findings contained in the DVR worksheet are based on the opinion provided by Dr. Brzezinski-Stein, there is no indication anywhere on that worksheet that this is in fact so. Nevertheless, as noted by defendant, this is a logical assumption to make, given that it appears DVR had referred plaintiff to Dr. Brzezinski-Stein for evaluation. In any event, defendant does not challenge that assumption, and thus the undersigned adopts it as well. However, the parties do disagree, not surprisingly, on whether the DVR findings constitute a fair reading of the limitations Dr. Brzezinski-Stein found. The undersigned finds defendant's position to be more persuasive.

    As noted above, one of the DVR worksheet findings is that plaintiff is unable to follow instructions, concentrate, remember or complete tasks. Tr. 121. This finding of total inability, however, is quite at odds with the opinion of Dr. Brzezinski-Stein that plaintiff exhibited strength in the areas of concentration and attention to visual detail and with respect to certain aspects of memory and reasoning. Tr. 114-15. Further, also as noted above, Dr. Brzezinski-Stein did opine that plaintiff would require hands-on teaching in a situation which is well supervised and allows for adequate time for new learning to crystallize before she

REPORT AND RECOMMENDATION
Page - 8

1  could perform routinized tasks.  While, as discussed above, this finding is not necessarily consistent with the
2  finding that plaintiff showed strength in the areas of concentration and attention to visual detail, at no point
3  did Dr. Brzezinski-Stein state that plaintiff had no ability in those areas.

4  It is true, as just noted, that Dr. Brzezinski-Stein did find plaintiff needed a particularized form of
5  training and supervision before she could perform the type of work and tasks Dr. Brzezinski-Stein opined
6  she eventually would be able to do.  Nevertheless, this does not necessarily mean, as discussed above, that
7  Dr. Brzezinski-Stein felt plaintiff would require <u>more</u> training or supervision than that received by others, or
8  that she would need such training specifically in order to "make adjustments in work methods" or to "shift
9  from one task to another." Tr. 121.  It also is not clear that Dr. Brzezinski-Stein felt plaintiff would be
10 unable to <u>maintain</u> skills "without intensive and/or specialized instruction or learning accommodations,"
11 although the finding concerning learning new tasks does appear to be fairly consistent with the limitations
12 found by Dr. Brzezinski-Stein in this regard. <u>Id.</u>

13 The undersigned does agree with plaintiff that the ability to remember, understand and carry out
14 instructions are relevant factors in assessing a claimant's residual functional capacity.  As discussed above,
15 however, the findings contained in the DVR worksheet regarding those factors are not consistent with the
16 findings made by Dr. Brzezinski-Stein concerning plaintiff's strengths in those areas.  In addition, the ALJ
17 actually referred to the "latter" factors he listed, such as the requirement for more supervision and training
18 than others, and the need for intensive and special instruction to learn new tasks.  Also as discussed above
19 though, neither defendant nor the ALJ has pointed to any legal authority to support their argument that the
20 need for such training and/or supervision is not a relevant factor for consideration.  Indeed, if the medical
21 evidence shows an inability to engage in work without first receiving specialized training and supervision,
22 this certainly would appear to be a factor of great significance.

23 Nevertheless, as pointed out by the ALJ in his decision, the Commissioner is not bound by the
24 disability determinations made by other agencies:

> A decision by . . . any other governmental agency about whether you are disabled . . . is
> based on its rules and is not our decision about whether you are disabled . . . We must
> make a disability . . . determination based on social security law. Therefore, a
> determination made by another agency that you are disabled . . . is not binding on us.

20 C.F.R. §§ 404.1504, 416.904.  Indeed, the standards contained in the DVR worksheet for determining
the severity of an individual's disability are significantly different from those used to determine eligibility for

REPORT AND RECOMMENDATION
Page - 9

Social Security disability benefits:

> To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that: (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Accordingly, the ALJ was not required to give the DVR worksheet findings any particular deference other than that for lay witness evidence in general, as discussed below, particularly in light of the inconsistencies discussed above between those findings and the opinion of Dr. Brzezinski-Stein.

The opinions of sources that are not "acceptable medical sources" generally are treated in the same manner as testimony of lay witnesses. See 20 C.F.R. §§ 404.1513(d), 416.913(d) (Commissioner may use evidence from other non-acceptable medical sources to show the severity of claimant's impairment(s) and how those impairments affects his or her ability to work); Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996) ("acceptable medical sources" include licensed physicians and certified psychologists). Here, there is no indication, or argument for that matter, that the person who completed the DVR worksheet was an acceptable medical source as defined by the Social Security Regulations. As such, the findings contained therein should be treated in the manner of lay witness evidence.

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; see also Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

Here, as discussed above, although the ALJ was not correct in stating that the need for specialized training and supervision were irrelevant factors in disability determinations, the other reasons he provided for rejecting the DVR worksheet findings were entirely germane. For example, the ALJ noted the findings

1 concerning plaintiff's attention, concentration and memory were inconsistent with those provided by Dr.
2 Brzezinski-Stein in her evaluation of plaintiff.  The ALJ also pointed out the differences in the standards
3 used to determine functional loss for DVR purposes and disability in the Social Security arena.  As such, the
4 ALJ properly rejected the findings contained in the DVR worksheet.

5       C.       The Opinions of Dr. Lewis and Dr. Clifford

6       A psychiatric review technique form was completed by Janis Lewis, Ph.D., in early July 2002, and
7 affirmed by Thomas Clifford, Ph.D., in mid-September 2007.  They found plaintiff had mild restrictions in
8 her activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in
9 maintaining concentration, persistence or pace, and no episodes of decompensation. Tr. 137.  In a mental
10 residual functional capacity assessment form completed at the same time, Drs. Lewis and Clifford more
11 specifically found plaintiff to be moderately limited in her ability to understand, remember and carry out
12 detailed instructions and interact appropriately with the general public. Tr. 140-41.  They also opined that
13 she would be capable of performing simple, but not complex, tasks. Tr. 142.

14       Defendant points to the finding of Dr. Lewis and Dr. Clifford that plaintiff could perform simple
15 work, which defendant argues is consistent with the opinion of Dr. Brzezinski-Stein and other evidence in
16 the record, and thus serves as additional evidence to support the ALJ's decision.  However, Dr. Brzezinski-
17 Stein found plaintiff to be capable of performing "routinized" tasks, and presumably by implication simple
18 work, only if she first received the type of training and supervision discussed above, a limitation not found
19 by Dr. Lewis or Dr. Clifford.  Thus, at least in this respect, the findings of Drs. Lewis and Clifford are not
20 consistent with those of Dr. Brzezinski-Stein, which, also as discussed above, the ALJ erred in evaluating.
21 Further, as non-examining physicians, the opinions of Drs. Lewis and Clifford may constitute substantial
22 evidence if they are "consistent with other independent evidence in the record." Lester v. Chater, 81 F.3d
23 821, 830-31 (9th Cir. 1996); Tonapetyan, 242 F.3d at 1149.  In any event, their opinions are entitled to less
24 weight than that of Dr. Brzezinski-Stein, an examining psychologist. Lester, 81 F.3d at 830-31.

25 II.       This Matter Should Be Remanded for Further Administrative Proceedings

26       The Court may remand this case "either for additional evidence and findings or to award benefits."
27 Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  Generally, when the Court reverses an ALJ's
28 decision, "the proper course, except in rare circumstances, is to remand to the agency for additional

REPORT AND RECOMMENDATION
Page - 11

investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain as to plaintiff's residual functional capacity and her ability to perform her past relevant work, this matter should be remanded to the Commissioner for further administrative proceedings. If it is determined on remand that plaintiff is not capable of returning to her past relevant work at step four of the sequential disability evaluation process, then the Commissioner also shall determine whether she is able to do other work existing in significant numbers in the national economy.

Plaintiff argues this matter should be remanded for an outright award of benefits. However, she has not yet shown she is disabled from performing all work. For example, plaintiff has pointed to no medical opinion in the record stating that she is unable to do any work. Indeed, even Dr. Brzezinski-Stein felt that plaintiff would be capable of performing at least some work, provided certain provisions with respect to training and supervision, discussed above, are made. In addition, also as discussed above, the ALJ did not err in rejecting the disability findings contained in the DVR worksheet. Thus, as noted above, issues still remain in this matter concerning plaintiff's eligibility for disability benefits.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written

objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 1, 2007**, as noted in the caption.

     DATED this 10th day of May, 2007.

                                  Karen L. Strombom
                                  United States Magistrate Judge